Multnomah Operating Co. v. Commissioner.
Multnomah Operating Co. v. Commissioner
Docket No. 52071.
United States Tax Court
T.C. Memo 1956-42; 1956 Tax Ct. Memo LEXIS 256; 15 T.C.M. (CCH) 185; T.C.M. (RIA) 56042; February 23, 1956
*256 Harry Henke, Jr., Esq., and Harold L. Scott, C.P.A., Dexter Horton Building, Seattle, Wash., for the petitioner. Joseph G. White, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency against the petitioner, Multnomah Operating Co., in the amount of $11,805.43 for the year 1948 and $11,530.56 for the year 1949. The sole issue for our determination is whether or not certain payments made in each year by petitioner constituted deductible business expenses under section 23(a)(1)(A) of the Internal Revenue Code of 1939. Findings of Fact Stipulated facts are so found. Petitioner, Multnomah Operating Co., hereinafter referred to at times as Multnomah, is a corporation with its principal office and place of business in Seattle, Washington. It filed income tax returns for the calendar years 1948 and 1949 with the collector for the district of Washington. Petitioner was incorporated in 1931 with a paid-in capital of $1,000 which was represented by 250 shares of common stock. On the following dates, these shares were held as listed: July 1
January
January
January
Shareholder
1931
1944
1948
1949
A. P. Bassett
15
15
15
15
A. D. Belanger
15
F. A. Dupar & Peoples Natl. Bank Coexecutors
under Will of A. P. Bassett
5
Frank A. Dupar
17
1/2
1/2
10 1/2
H. E. Dupar
15
H. E. Dupar and F. A. Dupar, Trustees
15
15
Eric V. Hauser
1
F. M. Kenney - qualifying share Pacific Coast
Investment Co.
1
1
1
John R. Latourette
1
Maltby-Thurston Hotels, Inc.
123
Peter G. Schmidt, Trustee
62
S. W. Thurston - qualifying share Maltby-
Thurston Hotels, Inc.
1
1
1
1
Voting Trust - in existence from May 1, 1940
to April 30, 1950
217 1/2
217 1/2
217 1/2
Total
250
250
250
250
*257 During the period 1944 through 1949 voting control of petitioner rested in the members of a voting trust, the identity and stock contributions to the trust of such members being as follows: MULTNOMAH OPERATING CO.
Members of Voting Trust from
May 1, 1940, to May 1, 1950
1944
1948
1949
F. A. Dupar
17
17
17
H. E. Dupar
15
Maltby-Thurston Hotels, Inc.
124
124
124
Pacific Coast Investment Co.
61 1/2
61 1/2
61 1/2
Seattle First National Bank,
Trustee under Will of H. E.
Dupar, deceased
15
15
Total
217 1/2
217 1/2
217 1/2
The total outstanding stock of the Maltby-Thurston Hotels, Inc., hereinafter referred to as Maltby, was as shown below in the following tabulations. These shares were held as follows on the following dates: MALTBY-THURSTON HOTELS, INC.
July 1, 1931
Principal
Common
Class A
Preferred
Stockholders
Stock
Stock
Stock
Troy E. Himmelman
1,991 2/3
32
79 1/2
F. M. Kenney
1
Harold Emery Maltby
6,569
1,260
196 1/4
Pacific Coast Investment Company
1 1/4
S. W. Thurston
10,153 1/4
120
188 1/2
Subtotal
18,714 11/12
1,412
465 1/2
Frank D. or Blanche Bruce
1,459
150
29
H. E. Lutz
2,042
70
175
Earl McInnes
1,566 2/3
35
89
Hy D. Miller
150
Total
23,782 7/12
1,667
908 1/2
Stock outstanding on dates indicated above
31,298 3/4
4,186 1/2
4,756
*258 Jan. 1, 1944
Jan. 1, 1948
Jan. 1, 1949
Common
Common
Common
Stock
Stock
Stock
Frank A. Dupar
0
856
1,178
T. E. Himmelman
775
797
836
F. M. Kenney
45
70
70
Harold Emery Maltby
100
525
525
Dewey W. Metzdorf
172
172
Pacific Coast Investment Co.
511 1/4
511 1/4
511 1/4
S. W. Thurston
26 1/4
184 3/4
300 3/4
Voting Trust
15,995 1/2
15,112
15,112
Subtotal
17,453
18,228
18,705
Frank D. or Blanche Bruce
1,569 1/4
1,569 1/4
1,569 1/4
H. E. Lutz
1,689 1/4
1,689 1/4
1,689 1/4
Earl McInnes
668 2/3
668 2/3
668 2/3
Hy D. Miller
344
Total
21,724 1/6
22,155 1/6
22,632 1/6
Stock outstanding on dates indicated above
27,528
30,323
30,401
MALTBY-THURSTON HOTELS, INC.
Stock in Voting Trust
Jan. 1,
1944
Jan. 1948
Jan. 1949
Frank A. Dupar
267
267
267
T. E. Himmelman
1,737
1,737
1,737
F. M. Kenney
108
108
108
H. E. Maltby
5,725 1/4
5,000
5,000
Adeline G. Metzdorf
1,000
1,000
Dewey W. Metzdorf
828
828
S. W. Thurston
8,158 1/4
6,172
6,172
Total
15,995 1/2
15,112
15,112
Western Hotels, Inc., hereinafter referred to as Western, was incorporated *259 about 1930 as a hotel service organization rendering general services to all hotels for a consideration. It represented an effort on the part of Maltby, Pacific Coast Investment Co., hereinafter referred to for convenience as PCI, and Frank A. Dupar who had previously been competitors to thereafter cease competition and act in concert to their mutual benefit in the hotel business. Western's total capital stock during 1931 consisted of 5,630 shares which was reduced to 100 shares in 1934. Its stock was held as follows on the indicated pertinent dates: WESTERN HOTELS, INC.
Janu-
Janu-
Janu-
July 1,
ary
ary
ary
Shareholders
1931
1944
1948
1949
A. D. Belanger
1
Byron Hotel Co.
519
Capital Hotel Co.
558
H. W. Casson
1
Chas. T. Donworth
1
Frank A. Dupar
1
25
25
25
Elman Hotel Co.
299
Exchange Invest-
ment Co.
179
F. M. Kenney
1
H. E. Maltby
1
Maltby-Thurston
Hotels Inc.
2,886
50
50
50
Hy D. Miller
1
Carl E. Morck
1
Morck Hotel Co.
299
John C. Pierce
1
Thad S. Pierce
1
Adolph D. Schmidt
1
Peter G. Schmidt
1
S. W. Thurston
1
Washington Hotel
Co.
499
West Coast Hotel
Co.
378
Pacific Coast Invest-
ment Co.
25
25
25
Total
5,630
100
100
100
*260 The total outstanding stock of PCI was at all times 600,000 shares which were held on July 1, 1931, as follows: PACIFIC COAST INVESTMENT CO.
July 1, 1931
Number of
Stockholders
Shares Held
J. Duttenhoefer
1,008
W. J. Foster
540
W. B. Gaffney, Estate
2,400
A.C.C. Gamer
220
Henry Schupp
5,040
Larabie Stock Co.
78,246
Julia W. Larabie
9,601
C. Ted Larabie
2,400
Mary Ann Larabie
2,400
Lucien Larabie
2,400
Elizabeth Larabie
2,400
Sue M. Larabie
2,400
Fred Stocking
1,231
P. M. Troy
1,231
Sams V. Peters
270
Schmidt Estate, Inc.
348,506
Peter G. Schmidt
14,401
Mrs. Peter G. Schmidt
500
Frank T. Schmidt
7,200
Frederick W. Schmidt
905
Joe R. Speckart
37,472
J. H. Rohrbeck
1
F. M. Kenney
6,001
Toba Harris
6,000
N. P. Faris
135
Emma M. Foreman
12,906
Lena R. Gamer
25,812
C. E. Larabie
1,200
Mrs. R. D. Larabie
3,600
Emmy Mailand
5,334
U.S.National Bank of Portland,
Trustee
5,334
Dorothy L. Gamer
6,453
Leland S. Gamer
6,453
Total number of shares issued
600,000 on January 1, 1944, as follows: PACIFIC COAST INVESTMENT CO.
January 1, 1944
Number of
Stockholders
Shares Held
Dr. Marie D. Equi
5,334
Blanche Gaffney
1,200
F. M. Kenney
92,371
Frank J. Kenney
2,500
Janet Lee
2,500
Helen Malloy
2,500
Grace Mallory
2,500
Emma M. Foreman
25,812
W. J. Foster
540
Olive B. Gaffney
1,200
A.C.C. Gamer
12,906
Dorothy L. Gamer
6,573
Leland L. Gamer
6,553
Irene Hannah
6,000
F. M. Kenney, Peter G. Schmidt,
Trustees for Paula Speckart
37,472
Mrs. R. D. Larabie
3,600
Caroline Schmidt Maury
4,000
J. C. Sams
270
Phillipine S. Rettenmeyer
62,175
Adolph Schmidt
42,175
Clara M. Schmidt, Trustee
20,000
Clara M. Schmidt, Personal
500
Louise W. Schmidt
62,179
Peter G. Schmidt, Frank T. Schmidt,
J. B. Peyton, Trustees for Elsa
Schmidt
63,080
Peter G. Schmidt, Personal
42,175
Frank T. Schmidt, Trustee
70,383
Adolph Schmidt, Jr.
4,000
Robert A. Schmidt
4,000
Truman L. Schmidt
4,000
Philip H. Schmidt
4,000
Katherine Schupp
5,040
Alma Stocking
1,231
Smith Troy
1,231
Total number of shares issued
600,000
*261 on January 1, 1948, as follows: PACIFIC COAST INVESTMENT CO.
January 1, 1948
Number of
Stockholders
Shares Held
Maltby-Thurston Hotels, Inc.
471,983
F. M. Kenney
82,271
Frank J. Kenney
4,500
Irene Kenney
2,000
Janet Lee
4,500
Dr. Marie D. Equi
5,334
Helen A. Malloy
4,600
Grace Mallory
4,500
New Washington Hotel Co.
19,112
Olive B. Gaffney
1,200
Total number of shares issued
600,000 and on January 1, 1949, as follows: PACIFIC COAST INVESTMENT CO.
January 1, 1949
Number of
Stockholders
Shares Held
Maltby-Thurston Hotels, Inc.
433,522
New Washington Hotel Co.
58,773
Dr. Marie Equi
5,334
F. M. Kenney
81,371
Frank J. Kenney
4,500
Janet Lee
4,500
Irene Kenney
2,000
Helen A. Malloy
4,600
Mark A. Malloy
900
Grace Mallory
4,500
Total stock issued
600,000
The officers and directors of Maltby during the period 1944 through 1949 were as follows: 1944, 1945
Directors
Officers
S. W. Thurston
S. W. Thurston, Pres.
F. A. Dupar
F. A. Dupar, Vice Pres.
T. E. Himmelman
T. E. Himmelman, Vice
H. E. Maltby
Pres.
H. W. Casson
H. E. Maltby, Sec.-Treas.
Chas. T. Donworth
H. W. Casson, Asst. Sec.-
F. M. Kenney
Treas.
1946, 1947, 1948
S. W. Thurston
S. W. Thurston, Pres.
F. A. Dupar
F. A. Dupar, Vice Pres.
T. E. Himmelman
T. E. Himmelman, Vice
H. E. Maltby
Pres.
Chas. T. Donworth
H. E. Maltby, Sec.-Treas.
F. M. Kenney, Asst. Sec.-
Treas.
1949
S. W. Thurston
S. W. Thurston, Pres.
F. A. Dupar
F. A. Dupar, Vice Pres.
T. E. Himmelman
and Asst. Treas.
H. E. Maltby
T. E. Himmelman, Vice
Chas. T. Donworth
Pres.
Dewey W. Metzdorf
H. E. Maltby, Sec.-Treas.
F. A. Weston, Asst. Sec.-
Treas.
*262 The officers and directors of the petitioner, Multnomah, for the years 1931 and 1944 through 1949, inclusive, were as follows: 1931
Directors
Officers
S. W. Thurston
S. W. Thurston, Pres.
Earl V. Hauser
E. V. Hauser, Vice Pres.
F. A. Dupar
F. A. Dupar, Sec.
Peter G. Schmidt
Peter G. Schmidt, Treas.
H. E. Maltby
H. E. Maltby, Asst. Sec.
John R. Latourette
1944, 1945, 1946
S. W. Thurston
S. W. Thurston, Pres.
F. M. Kenney
F. M. Kenney, Vice Pres.
F. A. Dupar
Earl McInnis, Vice Pres.
F. A. Dupar, Sec.
H. E. Maltby, Treas.
H. W. Casson, Asst. Treas.
1947
S. W. Thurston
S. W. Thurston, Pres.
F. M. Kenney
F. M. Kenney, Vice Pres.
F. A. Dupar
Earl McInnis, Vice Pres.
F. A. Dupar, Sec.
H. E. Maltby, Treas.
F. A. Weston, Asst. Sec.-
Treas.
1948, 1949
S. W. Thurston
S. W. Thurston, Pres.
F. M. Kenney
F. M. Kenney, Vice Pres.
F. A. Dupar
Gordon Bass, Vice Pres.
F. A. Dupar, Sec.
H. E. Maltby, Treas.
F. A. Weston, Asst. Treas.
The officers and directors of Western for the years 1944 through 1949, inclusive, were as follows: 1944, 1945, 1946
Directors
Officers
S. W. Thurston
S. W. Thurston, Pres.
F. M. Kenney
F. M. Kenney, Vice Pres.
F. A. Dupar
T. E. Himmelman, Vice
Pres.
F. A. Dupar, Sec.
H. E. Maltby, Treas.
H. W. Casson, Asst. Sec.-
Treas.
1947
S. W. Thurston
S. W. Thurston, Pres.
F. M. Kenney
F. M. Kenney, Vice Pres.
F. A. Dupar
T. E. Himmelman, Vice
Pres.
E. E. Carlson, Vice Pres.
C. W. Hunlock, Vice Pres.
F. A. Dupar, Sec.
H. E. Maltby, Treas.
1948
S. W. Thurston
S. W. Thurston, Pres.
F. M. Kenney
F. M. Kenney, Vice Pres.
F. A. Dupar
T. E. Himmelman, Vice
Pres.
Dewey W. Metzdorf, Vice
Pres.
C. W. Hunlock, Vice Pres.
E. E. Carlson, Vice Pres.
F. A. Dupar, Sec.
H. E. Maltby, Treas.
F. A. Weston, Asst. Sec.-
Treas.
1949
S. W. Thurston
S. W. Thurston, Pres.
F. M. Kenney
F. M. Kenney, Vice Pres.
F. A. Dupar
T. H. [T. E.] Himmelman,
Vice Pres.
Dewey W. Metzdorf, Vice
Pres.
C. W. Hunlock, Vice Pres.
E. E. Carlson, Vice Pres.
F. A. Dupar, Sec.
H. E. Maltby, Treas.
*263 The officers and directors for PCI from 1944 through 1949, inclusive, were as follows: 1944, 1945, 1946
Directors
Officers
F. M. Kenney
F. M. Kenney, Pres.
Peter G. Schmidt
A.C.C. Gamer, Vice Pres.
A.C.C. Gamer
F. W. Schmidt, Sec.
A. D. Schmidt
F. W. Schmidt
1947
F. M. Kenney
F. M. Kenney, Pres.
Peter G. Schmidt
A.C.C. Gamer, Vice Pres.
A.C.C. Gamer
F. W. Schmidt
A. D. Schmidt, Jr.
F. W. Schmidt
1948, 1949
F. M. Kenney
F. M. Kenney, Pres.
F. A. Dupar
F. A. Dupar, Vice Pres.
S. W. Thurston
S. W. Thurston, Sec.-
Treas.
F. A. Weston, Asst. Sec.-
Treas.
The Multnomah voting trust stock was votable by S. W. Thurston, Frank Dupar and F. M. Kenney on behalf of PCI in that order conditioned upon whether he who had the primary right so to do died, became incapacitated, unwilling or unable to vote the stock. The Maltby voting trustees in 1948 and 1949 were H. E. Maltby, S. W. Thurston, T. E. Himmelman, Frank A. Dupar and F. M. Kenney. By a lease, dated June 17, 1931, negotiated at arm's length, Hauser Securities Company leased the Multnomah Hotel in Portland, Oregon, to Maltby for a term of 15 years commencing July 1, 1931, and *264 ending July 1, 1946. The lease rental consisted of a minimum fixed monthly rental of $7,000 per month and a designated percentage of gross revenue. No bonus or consideration other than this rental was paid to the lessor. The lease, inter alia, provided: "This lease to a large extent is based upon the personnel of the present officers of said Lessee and their ability to conduct and operate a first-class hotel and by reason thereof Lessee covenants and agrees not to assign this lease nor sublet nor underlet nor permit any other person or persons to occupy said premises other than the employees and patrons of said Lessee without the consent of said Lessor being first obtained in writing. * * * (Provided further that it is understood and agreed that the within Lessee contemplates the forming of an Oregon corporation to whom the within lease may be assigned by it, the majority of the personnel of which will be the same as that of the within named Lessee and/or Western Hotels Inc. and Lessor consents to the within named Lessee assigning the within lease to said corporation to be duly formed providing that said assignment shall be subject to all of the terms, covenants and conditions *265 of the within lease and with the consent that the demised premises are only to be used for the purposes herein stated and that the within consent shall in nowise alter, change or modify any term, covenant, provision or condition hereof nor shall this consent be continuing or extended to any other person, firm or corporation; provided further that said assignee shall in a form entirely satisfactory to the within named Lessor accept said assignment and agree to be bound by all the terms, covenants and conditions of the within lease; that this consent of assignment is limited to the one assignment herein stated, and after such assignment all liability of the within Lessee shall be at an end.)" The lessor required the deposit of security for the performance by petitioner of the lease provisions. To that end Maltby issued to petitioner $75,000 of its preferred stock which petitioner agreed to purchase. Petitioner in turn deposited the stock as security with the lessor. PCI, through its trustee, Peter G. Schmidt, and Frank Dupar each guaranteed to Maltby in writing that petitioner would pay the par value of 25 per cent of such stock. Each was required at an undisclosed time to pay the *266 amount so guaranteed for which payment each was subsequently reimbursed by petitioner. On June 30, 1931, Maltby assigned its interest as lessee to petitioner, said assignment being assented to by the lessor. The assignment was therein stated to be "For One Dollar ($1.00) and other good and valuable consideration." The lease had been in negotiation for a period of approximately 10 months prior to its execution. The negotiators had been Dupar, Peter Schmidt and S. W. Thurston, who met with Hauser for negotiation approximately twenty times. At the time of assignment of the lease to petitioner, Dupar insisted upon compensation for his services rendered in the negotiations for the lease, for his guarantee of payment of par value of 25 per cent of the Maltby stock placed with the lessor as security by petitioner, and for what he alleged was his interest in the lease. It was agreed between Maltby, PCI and Dupar that petitioner would pay to them for the assignment of the lease of the hotel premises the amount of $2,500 per month after payment of the fixed and percentage rentals required by the lease terms. Of this amount, Dupar insisted that he receive $625 per month as such compensation. *267 The remainder, it was agreed, would be divided between PCI and Maltby in proportion to their respective stock holdings in petitioner. These payments were provided for by a separate written agreement between petitioner and Maltby entered into simultaneously with the assignment of the lease. Except for an undisclosed but short period of time immediately following inception, these payments have been made throughout the term of the lease and the extension thereof. At the time the lease was executed the Multnomah Hotel was in bad repair, and it was apparent that large expenditures would be required in order to make it a profitable business asset. To that end, the lease required the expenditure by petitioner of $21,600 per year over and above all other amounts or that such portion of that amount not so spent be paid to the lessor. The original lease terminated by its provisions July 1, 1946, but an extension was sought by petitioner as early as 1940 when it became apparent that negotiations by others were in progress in Portland looking toward the construction of a new hotel. Without the expenditure of about $400,000 for reequipment, remodeling and redecorating, petitioner's hotel could *268 not withstand the competition of a new hotel. Before making such an investment, therefore, petitioner desired an extension of its lease. Negotiations for the lease extension were carried on by S. W. Thurston and Dupar, Schmidt having taken no part therein. Ultimately an extension agreement was executed directly between petitioner and the owner of the hotel property. This agreement, dated February 4, 1944, extended the term of the original lease to July 1, 1961, and provided for an increase of the minimum fixed rental to $8,500 per year. All of the terms and conditions of the original lease remained in full force and effect under the extension agreement, including the provision that the officers and personnel of petitioner were to be the same as Maltby or Western. Simultaneously petitioner and Hauser entered into a separate written agreement whereby provision was made for replacement of the original security of $75,000 of Maltby preferred stock with a like amount of the common stock of that corporation which was to be forfeited to Hauser as liquidated damages in case of petitioner's default in the lease terms. This was stock purchased and owned by petitioner. By an agreement between *269 Maltby and Western, as first parties, and petitioner, as second party, dated February 3, 1944, petitioner agreed to continue the payments to Dupar, Maltby and PCI at the rate of $625, $1,250 and $625, respectively, throughout the extended term of petitioner's lease. The consideration therein stated for such extension of the payments is the agreement of said payees to accede to the lease extension at a higher minimum rental before the expiration of the original lease, the agreement of Maltby that its officers and personnel or that of Western would continue to operate the Multnomah Hotel, and the services of Maltby, Western and Frank Dupar in securing through negotiation the lease extention agreement. Peter G. Schmidt, as trustee of PCI, did not in fact aid in the procurement of the extension agreement. However, he and Dupar each approved the last mentioned agreement by their signatures. Opinion In its petition, its opening argument and on brief, petitioner has sought to limit the issue before us to the sole question of whether or not under section 23(a)(1)(A) of the 1939 Code [1] the amounts in controversy are properly deductible for the years 1948 and 1949 as rentals or other amounts *270 necessary for petitioner's use and occupancy of the Multnomah Hotel property. Respondent, on the other hand, takes the view that such amounts are in reality nothing more nor less than distributions in the nature of guaranteed dividends to stockholders of petitioner and generally has determined that they are not deductible as ordinary and necessary business expense. *271 That the amounts involved, which were paid on either a monthly or a quarterly basis, totaling $2,500 per month, to Maltby, PCI and Dupar, hereinafter collectively referred to as payees, were not rentals, even though so designated in written contracts between the three payees and petitioner, we think is fairly obvious. In the light of the testimony of Dupar and S. W. Thurston who represented Maltby in all the transactions here involved, it is clear that the basis for the payments was services rendered by the three payees prior to the execution of the original lease in 1931 and also prior to the execution of the renewal agreement in 1944 and for services to be rendered thereafter during the term of the lease and its renewal. Petitioner, in contending that such payments were rentals and in attempting to show adequate consideration, therefore, urges that they were actually compensation for such services rendered in the past and to be rendered throughout the term of the lease. That being true, we can not conclude otherwise than that such payments were not rentals. We conclude from the facts as found that all the transactions referred to in such findings, with the exception of the lease *272 and the renewal thereof negotiated with Hauser, were not arrived at on an arm's length basis. We must therefore scrutinize such transactions closely with respect to whether or not the controversial payments are "other payments required to be made as a condition to the continued use" of the hotel premises. The test, of course, lies in the answer to the question as to the likelihood or probability of an interruption in petitioner's use of such property in case it should default in such payments. The facts show clearly a close relationship between the three payees here involved and petitioner. Through a voting trust arrangement, they controlled petitioner. They were the parents responsible for its birth. As to the date of renewal of the lease, through their efforts, petitioner had become an increasingly valuable asset with bright prospects for its future. We do not think it is realistic to conclude that the three payees would have refused longer to render the services required of them in petitioner's operation under the lease in the event of default in the payment of the amounts in controversy, although concededly such default otherwise could have resulted in violation of the terms of *273 the lease through the payees' refusal to longer render the operational services therein required. We are impressed however that this record fully substantiates the conclusion that whatever the petitioner has named the amounts sought to be deducted, they were compensation for services rendered in the ordinary course of petitioner's business within the meaning of section 23(a)(1)(A). While respondent does contend that the $2,500 monthly payments are in excess of the true rental value of the hotel premises, he makes no contention that they are excessive or unreasonable as compensation. We think that, in the light of the long experience of all three payees in the hotel business and in view of their efforts in the negotiating of the original lease and the efforts of Dupar and Maltby in the negotiating of the renewal thereof, together with other services required of one or the other of them under the lease and its extension and agreements in pursuance thereof, such compensation is not unreasonable. Accordingly, we hold that the payments in question were deductible by petitioner. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In general. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩